UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| ALENA KRILEY,<br><br>    Plaintiff,<br><br>vs.<br><br>PAUL KRILEY,<br><br>    Defendant. | ) Case No.: 22 C 4832<br>)<br>) DEFENDANT'S RESPONSE TO<br>) PLAINTIFF'S MOTION FOR SUMMARY<br>) JUDGMENT<br>)<br>) ASSIGNED JUDGE: Martha M. Pacold<br>) MAGISTRATE JUDGE: Jeffrey Cole<br>)<br>) |

Defendant, Paul Kriley, through his attorneys, Stern Perkoski Mendez, LLC, responds to the Plaintiff's Motion for Summary Judgment as follows:

### **OBJECTIONS TO FORM**

As a general matter, the Local Rules of the Northern District of Illinois require that all motions for summary judgment comply as follows:

**(a) Moving Party.** With each summary judgment motion filed under Fed. R. Civ. P. 56, the moving party must serve and file—

(1) a supporting memorandum of law that complies with LR 56.1(g); and

(2) a statement of material facts that complies with LR 56.1(d) and that attaches the cited evidentiary material.

(3) Failure to comply with LR 56.1(a)(1) or (a)(2) may be grounds for denial of the motion. LR 56.1(a).

\*\*\*\*\*\*\*\*\*\*\*

**(1) Form. Each LR 56.1(a)(2) statement of material facts and LR 56.1(b)(3) statement of additional facts must consist of concise numbered paragraphs.**

(2) Citations. Each asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation.

(3) All evidentiary material identified in LR 56.1(a)(2) and LR 56.1(b)(3) citations must be included as numbered exhibits with the statements of fact.

(4) LR 56.1(a)(2) statements of material facts and LR 56.1(b)(3) statements of additional facts should not contain legal argument.

(5) A movant's LR 56.1(a)(2) statement of material facts must not exceed 80 numbered paragraphs. An opposing party's LR 56.1(b)(3) statement of additional facts must not exceed 40 numbered paragraphs. A party must seek the court's permission before exceeding these limits.

LR 56.1(d) (emphasis added).

Plaintiff has failed to abide by local rules in regard to their statement of material facts. Plaintiff's statement of material facts does not consist of concise numbered paragraphs, but is written narratively and is included within Plaintiff's memorandum of law and not as a separate document. Pursuant to LR 56.1(a)(3), Plaintiff's motion should be stricken for failure to abide by local rules.

**RESPONSE**

1. For the reasons stated in Defendant's contemporaneously filed Memorandum of Law in Support of Defendant's Response to Plaintiff's Motion Summary Judgement, Plaintiff's Motion for Summary Judgment should be denied.

WHEREFORE, Defendant, Paul Kriley, prays that this court deny Alena Kriley's Motion for Summary Judgment and grant any other relief this Court deems proper.

Respectfully Submitted,

PAUL KRILEY

DATED: 11/8, 2023

_____/s/_____
Jason G. Shore, Esquire of STERN PERKOSKI MENDEZ

STERN PERKOSKI MENDEZ
Jason G. Shore
Attorney for Paul Kriley
1200 Jorie Blvd
Suite 312
Oakbrook, IL 60523
Email: Jshore@sternperkoski.com
Attorney Bar Number: 6304001

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| ALENA KRILEY, | ) Case No.: 22 C 4832 ) |
| Plaintiff, | ) ) DEFENDANT'S MEMORANDUM OF LAW |
| vs. | ) IN SUPPORT OF SUMMARY JUDGMENT ) |
| PAUL KRILEY, | ) ) |
| Defendant. | ) ASSIGNED JUDGE: Martha M. Pacold ) MAGISTRATE JUDGE: Jeffrey Cole |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and LR 56.1(g), Defendant, Paul Kriley, by and through his attorneys, Stern Perkoski Mendez, LLC, files this Memorandum of Law in Support of Response to Motion for Summary Judgment.

**ARGUMENT AND ANALYSIS**

Summary judgment is appropriate if "there is no genuine dispute of material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we read the facts and draw all reasonable inferences in the light most favorable to . . . the non-moving party." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022).

In drawing upon all inferences in a light most favorable to the Defendant, Plaintiff's motion for summary judgment should be denied. Plaintiff's argument takes a narrow and rote application of the statute but ignores or omits several items that defeat her positions.

Plaintiff's statement of facts disregards that Plaintiff has put forward multiple affirmative defenses that have yet to be resolved. The first of which is the argument of mitigation, which does not strictly apply to Plaintiff's ability to work. Defendant has questioned why the Plaintiff has not taken steps towards becoming a United States citizen.

Not just for her own benefit but for the sake of the parties' minor child. If the Plaintiff intends to continue her residency in the United States, there is no good cause as to why she should not seek her full citizenship. Remaining in a limbo as a permanent residence simply continues to create chaos and uncertainty, and particularly when you consider her current pending criminal issues and that she a minor child with the Defendant. There is no evidence that the Plaintiff has made good faith efforts to mitigate her damages in this situation by pursuing United States citizenship in the past two (2) years.

Furthermore, the issue of mitigation goes beyond just Plaintiff's work history but as to whether or not she is actually disclosing income. If the Plaintiff is not reporting income or hiding income, that would not appear on a social security statement or taxes. However, it is evident that she is receiving some funds as she and the Plaintiff have been living separate and apart ever since November 9, 2020, when the Defendant petitioned for and received his Emergency Order of Protection for himself and the parties' minor child. Exhibit 1 is a copy of the November 9, 2020, Emergency Order of Protection. Since that date of separation, the Plaintiff has paid for all of her own expenses.

On October 28, 2021, Alena provided an Illinois Financial Affidavit with supporting documents (Exhibit 2). As of October 28, 2021, the Plaintiff stated her monthly expenses exceeded $5,000.00 a month which does not include any payments towards her outstanding credit card debt. The plaintiff further lists numerous loans that she has provided promissory notes for which indicate interest and payment by December 31, 2021, for each note. In sum total, the Plaintiff indicated that she had borrowed $57,530.00 over the course of approximately six (6) months of which, at least, $29,380.00 were for legal fees and costs, if not more. In sum total, the amount of loans that the Plaintiff has claimed to have required over this timeframe would not have even been enough to cover her stated living expenses.

One such promissory note made with Maryia Horbach indicates it was for various expenses for the minor child including food, clothing, babysitting expenses, and toys. What should be noted is that this promissory note was made June 1, 2021, while the minor child was still a protected party and following the entry of an emergency order that had been

entered on April 9, 2021 (Exhibit 3), which permitted the Defendant to leave the State of Illinois with the minor child due to the death threats that the Plaintiff was issuing against the Defendant and his family.

Further inspection of the Plaintiff's financial affidavit indicates that she "returned" loans in the amount of $123,162.00. It is not clear how she was able to return said loans nor the purpose for this "return" but it raises numerous doubts as to the Plaintiff's inability to support herself if she is both able to return such a large sum of money without concern or was able to do repay such a loan otherwise.

Beyond just the Plaintiff's financial affidavit, her course of actions further indicates her ongoing access to funds or ability to support herself. Namely, the Plaintiff, in or around the winter of 2020 fled the State of Illinois with the minor child by way of taking a taxi which she charted all the way to New York so that she could hide in the Consulate General of Belarus. Said trip cost thousands of dollars that the Plaintiff was able to procure. Another incident occurred in or around March 30, 2021, when the Plaintiff was able to fly herself down to the Fort Lauderdale area of Florida and hailed a Lyft which drove her around for almost two (2) hours while she probed her driver for information as to hire a hitman to kill the Defendant and his family members. Lastly, on or around April 8, 2021, the Plaintiff broke in the Defendant's apartment where she looted numerous items, including computers and $2,000.00 cash which was being held in a locked locker. For good measure, the Plaintiff had the locks changed on the Defendant's apartment so he could not gain access to his own home upon return.

All of the above is to state that, at this stage of the matter, it is not readily apparent that the Plaintiff is not currently supporting herself above the 125% guideline based on her spending and expenses and as such, summary judgment would be inappropriate.

Two of Defendant's affirmative defenses go beyond a simple analysis of the termination factors set forth under an I-864 Petition and are matters of public policy. This Court will ultimately need to factor in the impact the enforcement of the Plaintiff's complaint will have on his ability to support the minor child. The Plaintiff currently has no parenting time with

the minor child and is only permitted brief FaceTime calls. The minor child remains a protected party and based on the flight risk that the Plaintiff has presented herself as, it is likely she that any parenting time she has with the minor child will be supervised upon final judgment. As a result of the Plaintiff's inability to care for the minor child, the Defendant is the primary caretaker and is currently receiving no financial support or otherwise from the Plaintiff.

The Defendant submitted his own financial affidavit as part of the dissolution matter (Exhibit 4). Said financial affidavit shows that the Defendant, in 2021, was only making approximately $2120.00 a month, which in itself, hardly exceeds 125% of the Federal Poverty Guidelines for a household of two (2). While an inability to pay may not release the liability of the Defendant, enforcing the Defendant to pay the Plaintiff would place his own income below the Federal Poverty Guideline and render him unable to support himself and the parties' minor child as the Plaintiff continues to not pay towards any of the financial obligations for the parties' minor child.

Therefore, without considering the public policy components of this matter, summary judgment cannot be issued.

Additionally, the Court has yet to consider that Plaintiff, while not yet removed, is removable and possible deportable and ineligible for cancellation of removal. Defendant is the victim of domestic violence perpetrated the Plaintiff, for which there is an Order of Protection (Exhibit 5) and a criminal charge for violation of the Order of Protection. A Plenary Order of Protection was entered on _____.

On November 30, 2022, Plaintiff was arrested for violation of the Order. This case remains undetermined and pending in Cook County under case 22 DV 7540001. Therefore, Plaintiff may be removable and ineligible for cancellation of removal.

To qualify for cancellation of removal under INA § 240A(b), Petitioner must show that he has not been convicted of a disqualifying offense, which includes conduct described in INA § 237(a)(2)(E)(ii). *See* 8 U.S.C. § 1229b(b)(1)(C); 8 C.F.R. § 1240.8(d). Specifically, INA § 237(a)(2)(E)(ii) provides:

[a]ny alien who at any time after admission is enjoined under a protection order issued by a court and whom the court determines *has engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury* to the person or persons for whom the protection order was issued is deportable. For purposes of this clause, the term "protection order" means any injunction issued for the purpose of preventing violent or threatening acts of domestic violence, including temporary or final orders issued by civil or criminal courts (other than support or child custody orders or provisions) whether obtained by filing an independent action or as a pendente lite order in another proceeding. 8 U.S.C. § 1227(a)(2)(E)(ii) (emphasis added).

Thus, an alien such as potentially the Plaintiff is ineligible for cancellation of removal if she has been convicted of an offense amounting to conduct which "violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury."

The Supreme Court has developed an interpretive method, commonly called the categorical approach, to determine when a person's prior criminal conviction can be counted against the person for purposes of statutory sentencing enhancements or determinations of removability. Under the categorical approach, courts determine whether a person has sustained a conviction for a particular kind of crime by looking to whether the statute of conviction matches the "generic" version of the offense, or, rather, is broader, and could therefore be committed in a way that would not involve commission of the generic offense. See *Taylor v. United States*, 495 U.S. 575, 598, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The categorical approach thus directs a court's attention to the statute of conviction, rather than to any other information the court has about what conduct a person may have actually engaged in to warrant (or not) a criminal conviction. See *Descamps v. United States*, 570 U.S. 254, 133 S.Ct. 2276, 2287–88, 186 L.Ed.2d 438 (2013). The Court has explained that this approach has three core virtues. First, it respects the text of statutes that are enhanced or triggered, on their own terms, by convictions under criminal statutes, rather than by

participation in any particular prohibited conduct. *Mathis v. United States*, — U.S. —, 136 S.Ct. 2243, 2252, 195 L.Ed.2d 604 (2016). Second, it respects the requirement of the Sixth Amendment that only a jury may find facts that increase a maximum penalty. *Id.*; see *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). And third, it avoids unfairness to defendants by directing the focus of later courts only to those elements that the government was required to prove beyond a reasonable doubt in order to secure a conviction. *Mathis*, 136 S.Ct. at 2253.

As *Garcia–Hernandez* recognized, the main reason to apply the categorical approach springs from the first of the considerations the Court identified in *Mathis*—that the statutory text itself invokes a "conviction." See *Garcia–Hernandez*, 847 F.3d at 871 ("The categorical and modified categorical approaches are triggered by statutes that spell out consequences for criminal *convictions*.") (citing *Moncrieffe v. Holder*, 569 U.S. 184, 190–91, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013)). When a statute does not make itself contingent on a conviction, the categorical approach is unnecessary, and courts should respond to what the statute *does* depend on. While many of the conditions that may make an alien deportable, or ineligible for cancellation, are indeed prior convictions, 8 U.S.C. § 1227(a)(2)(E)(ii) does not invoke conviction. See 8 U.S.C. § 1227(a)(2)(A)(i) (aliens convicted of crimes involving moral turpitude are deportable); *id.* § 1227(a)(2)(A)(iii) (aggravated felonies); *id.* § 1227(a)(2)(B)(i) (drug crime convictions); *id.* § 1227(a)(2)(C) (firearm possession convictions). Rather, the text of (E)(ii) depends "on what a court 'determines' about the alien's conduct." *Garcia–Hernandez*, 847 F.3d at 872.

For an alien to be deportable or ineligible for cancellation under (E)(ii), there must (1) have been a protection order entered against the alien, (2) at least one part of that order must have involved protection against a credible threat of violence, and (3) a court must have determined that the alien engaged in conduct that violated that portion. As explained in *Garcia–Hernandez*, the statute asks whether a court has "determined" that an alien engaged in conduct that violated the restraining order's relevant part, not whether the statute under which the alien was convicted necessarily in all cases, or categorically, involved such

behavior. 847 F.3d at 873. Indeed, a conviction is not required at all, just a court's determination (which may, of course, comprise a conviction). *Id.* In addition, the first and second elements identified above do not call for a categorical approach, either. Rather, they ask: was a protection order issued, and did part of it "involve" protection against a credible threat of violence? These are questions not about the law—although the laws that authorized a particular order may be instructive—but about the purpose of a given order, and the purpose of its *285 provisions.[1]

Breaking (E)(ii) into its elements brings Rodriguez's case more clearly into view.

First, the order that restrained Rodriguez was a protection order. A protection order is "any injunction issued for the purpose of preventing violent or threatening acts of domestic violence." 8 U.S.C. § 1227(a)(2)(E)(ii). The order's face in this case makes its purpose plain. It is titled "Notice of Hearing—Temporary Restraining Order (Domestic Abuse)." And it indicates expressly that the defendant, Kriley, is in imminent danger of physical harm. Coupled with its stay-away provisions, and the added requirement that the person restrained, Plaintiff, refrain from acts of domestic abuse, it is obvious that the order was issued, at least partly, for the purpose of preventing violent or threatening acts of domestic violence.

Second, the portion of the order requiring that Plaintiff avoid defendant's residence involves protection against credible threats of violence, repeated harassment, or bodily injury. The BIA determined that this provision related to protecting against future threats of violence, and relied on its previous determination that the no-contact and stay-away provisions of restraining orders involve such protection. See *In re Strydom*, 25 I. & N. Dec. 507, 510–11 (B.I.A. 2011). As in *Garcia–Hernandez*, we agree with the BIA's interpretation of § 1227(a)(2)(E)(ii) on this score.

Third, and uncontestably, a court determined that Plaintiff engaged in conduct that violated the no-contact provision. The criminal complaint alleged that she remained at a doctor's appointment where Defendant and their child were present. , and is charged with having knowingly violated the domestic abuse order that enjoined that behavior. See *Garcia–Hernandez*, 847 F.3d at 870, 872–73 (deciding that the state court determined

petitioner violated the stay-away portion of a restraining order where he pleaded guilty to violating the order, and relying on the charging document to determine what behavior the court determined he engaged in). It does not matter that Plaintiff may not have acted violently by remaining on the premises; her violation of the avoidance-of-contact provision is enough.

Lastly, as a procedural matter, the doctrine of res judicata should apply and Plaintiff and Defendant have an ongoing domestic relations case where the affidavit of support has been brought up. *See Kawai v. Uacearnaigh*, 249 F. Supp. 3d 821 (D.S.C. 2017) [dismissing I-864 action in federal Court under *Younger* abstentation because of ongoing family court proceedings where federal claims may adequately be raised]; *Yanguil v. Lee*, 2014 WL 1400959 (E.D. Cal Apr. 10, 2014 [ res judicata dismissal because I-864 was raised in settlement conference in divorce proceedings].

As a result of the above pending affirmative defenses that have been put forward by Defendant which remain pending and unresolved, summary judgment cannot be issued at this point in the matter.

**WHEREFORE** the Defendant asks this Court to deny Plaintiff's Motion for Summary Judgment.

Respectfully Submitted,

PAUL KRILEY

DATED: November, 2023

_____/s/_____
Jason G. Shore, Esquire of STERN PERKOSKI MENDEZ

STERN PERKOSKI MENDEZ
Jason G. Shore
Attorney for Paul Kriley
1200 Jorie Blvd
Suite 312
Oakbrook, IL, 60523
Email: Jshore@sternperkoski.com
Attorney Bar Number: 6304001

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| ALENA KRILEY,<br><br>    Plaintiff,<br><br>vs.<br><br>PAUL KRILEY,<br><br>    Defendant. | ) Case No.: 22 C 4832<br>)<br>) DEFENDANT'S RESPONSE TO<br>) PLAINTIFF'S STATEMENT OF MATERIAL<br>) FACTS IN SUPPORT OF MOTION FOR<br>) SUMMARY JUDGMENT<br>)<br>) ASSIGNED JUDGE: Martha M. Pacold<br>) MAGISTRATE JUDGE: Jeffrey Cole<br>) |

## NONMOVANT'S LOCAL RULE 56.1(b)(2) RESPONSE TO THE STATEMENT OF MATERIAL FACTS

### GENERAL OBJECTIONS

As stated in Defendant's Response to Plaintiff's Motion for Summary Judgment, Plaintiff has failed to abide by local rules in regard to their statement of material facts. Plaintiff's statement of material facts does not consist of concise numbered paragraphs, but is written narratively and is included within Plaintiff's memorandum of law and not as a separate document. Pursuant to LR 56.1(a)(3), Plaintiff's motion should be stricken for failure to abide by local rules.

| | **Movant's Fact** | **Nonmovant's Response** |
|---|---|---|
| 1 | *Fact*: Ms. Kriley is a citizen of Belarus. | *Response*: Admit. |
| | *Citation*: Declaration of Alena Kriley in Support of Plaintiffs Motion for Preliminary Injunction ("Kriley Decl."), ¶ 21 | *Citation*: |

| | **Movant's Fact** | **Nonmovant's Response** |
|---|---|---|
| 2 | *Fact*: Mr. Kriley is a United States citizen. | *Response*: Admit. |
| | *Citation*: Complaint, Dkt. 1, p. 2 | *Citation*: |

|   | **Movant's Fact** | **Nonmovant's Response** |
|---|---|---|
| 3 | *Fact*: The couple married in the USA on January 21, 2016 | *Response*: Admit. |
|   | *Citation*: Id., ¶44 | *Citation*: |

|   | **Movant's Fact** | **Nonmovant's Response** |
|---|---|---|
| 4 | *Fact*: Mr. Kriley thereafter commenced the process of facilitating Alena Kriley's immigration to the United States | *Response*: Admit. |
|   | *Citation*: None. | *Citation*: |

|   | **Movant's Fact** | **Nonmovant's Response** |
|---|---|---|
| 5 | *Fact*: Mr. Kriley filed a Petition for Alien Relative (Ms. Kriley), I-130 Form, which wasreceived by USCIS on August 11, 2016. | *Response*: Admit. |
|   | *Citation*: Id., ¶¶ 45-49 & Ex.3 | *Citation*: |

|   | **Movant's Fact** | **Nonmovant's Response** |
|---|---|---|
| 6 | *Fact*: Ms. Kriley simultaneously filed a Residency Application based on the Petition for Alien, I-485 Form, which was received by USCIS on August 11, 2016. | *Response*: Admit. |
|   | *Citation*: Id., ¶¶ 50-55 & Ex. | *Citation*: |

|   | **Movant's Fact** | **Nonmovant's Response** |
|---|---|---|
| 7 | *Fact*: Under the "public charge" ground of inadmissibility, an intending immigrant is inadmissible ifdetermined likely to become a public charge — meaning dependent on public benefits. | *Response*: Admit. |

|   | | |
|---|---|---|
|   | *Citation*: 8 U.S.C. §1182(a)(4)(A | *Citation*: |

|   | **Movant's Fact** | **Nonmovant's Response** |
|---|---|---|
| 8 | 1. *Fact*: As a family-sponsored intending immigrant, Ms. Kriley was required to file an Affidavit of Support signed by Mr. Kriley, her petitioner | *Response*: Admit. |
|   | *Citation*: 8 U.S.C. § 1182(a)(4)(C | *Citation*: |

|   | **Movant's Fact** | **Nonmovant's Response** |
|---|---|---|
| 9 | *Fact*: Without aproperly completed and approved by the USCIS Affidavit of Support, Ms. Kriley would be withoutquestion categorically inadmissible on public charge grounds. | *Response*: Deny. |
|   | *Citation*: None. | *Citation*: |

|   | **Movant's Fact** | **Nonmovant's Response** |
|---|---|---|
| 10 | *Fact*: On July 25, 2016, Mr. Kriley signed an Affidavit of Support, listing Ms. Kriley as its beneficiary. | *Response*: Admit. |
|   | *Citation*: Complaint, ¶ 56 & Ex. 5 | *Citation*: |

|   | **Movant's Fact** | **Nonmovant's Response** |
|---|---|---|
| 11 | *Fact*: The contract provided, in pertinent part:<br><br>Sponsor's Contract Please note that, by signing this Form 1-864, you agree to assume certain specific obligations under the Immigration and Nationality Act (INA) and other Federal laws. The following | *Response*: Admit. |

| | |
|---|---|
| paragraph describe those obligations. Please read the following information carefully before you sign Form I-864. If you do not understand the obligations, you may wish to consult an attorney or accredited representative.<br><br>**What is the Legal Effect of My Signing Form 1-864?**<br><br>If you sign Form 1-864 on behalf of any person (called the intending immigrant) who is applying for an immigrant visa or for adjustment of status.to a lawful permanent resident, and that intending immigrant submits Form.1-864 to the U.S. Government with his or her application for an immigrant visa or adjustment of status, under INA section 213A, these actions create a contract between you and the U.S. Government. The intending immigrant becoming a lawful permanent resident is the consideration for the contract [...]<br><br>**What Does Signing Form 1-864 Require Me to do?**<br><br>If an intending immigrant becomes a lawful permanent resident in the United States based on a Form 1-864 that you have signed, then, until your obligations under Form 1-864 terminate, you must:<br><br>A .Provide the intending immigrant any support necessary to maintain him or her at an income that is at least 125 percent of the Federal Poverty Guidelines for his or her household size [...]<br><br>**When Will These Obligations End?**<br><br>Your obligations under a Form 1-864 that you signed will end if the person who becomes a lawful permanent resident based on that affidavit: | |

|   |   |
|---|---|
| A. Becomes a U.S. citizen;<br><br>B. Has worked, or can receive credit for, forty quarters of coverage under the Social Security Act;<br><br>C. No longer has lawful permanent resident status and has departed the United States;<br><br>D. Is subject to removal, but applies for and obtains in removal proceedings a new grant of adjustment of status based on a new affidavit of support, if one is required;<br><br>E. Dies.<br><br>NOTE: Divorce does not terminate your obligations under Form I-864 |   |
| *Citation*: Complaint, Ex.5, p. 7-8 | *Citation*: |

|    | **Movant's Fact** | **Nonmovant's Response** |
|----|---|---|
| 12 | *Fact*: The Affidavit of Support further provided that by signing it, Mr. Kriley could be sued by Ms. Kriley for the promised financial support. | *Response*: Admit. |
|    | *Citation*: None. | *Citation*: |

|    | **Movant's Fact** | **Nonmovant's Response** |
|----|---|---|
| 13 | *Fact*: Mr. Kriley certified that he knew and understood the contents of the Affidavit and understood that divorce would not end his obligations under the Affidavit. | *Response*: Admit. |
|    | *Citation*: Id, p. 9 | *Citation*: |

|    | Movant's Fact | Nonmovant's Response |
|----|---------------|----------------------|
| 14 | *Fact*: The Affidavit was signed by Mr. Kriley. | *Response*: Admit. |
|    | *Citation*: Id., p. 9. | *Citation*: |

|    | Movant's Fact | Nonmovant's Response |
|----|---------------|----------------------|
| 15 | *Fact*: The Government approved the Petition for Alien Relative and the Residency Application, and Ms. Kriley became a resident on December 1, 2016. | *Response*: Admit. |
|    | *Citation*: Complaint, ¶62 & Ex.6 | *Citation*: |

|    | Movant's Fact | Nonmovant's Response |
|----|---------------|----------------------|
| 16 | *Fact*: As explained below, Mr. Kriley's duties under the Affidavit were triggered when Ms. Kriley became a resident | *Response*: Admit. |
|    | *Citation*: None. | *Citation*: |

|    | Movant's Fact | Nonmovant's Response |
|----|---------------|----------------------|
| 17 | *Fact*: riley and Mr. Kriley ceased residing together as a married couple on September 29, 2020. | *Response*: Admit. |
|    | *Citation*: Kriley Decl., ¶ 5 | *Citation*: |

|    | Movant's Fact | Nonmovant's Response |
|----|---------------|----------------------|
| 18 | *Fact*: The parties are legally separated but have not finalized a divorce. | *Response*: Admit. |
|    | *Citation*: Id., ¶ 2 | *Citation*: |

|    | Movant's Fact | Nonmovant's Response |
|----|---------------|----------------------|
| 19 | *Fact*: They continue to be embroiled in custody litigation concerning their child, JK. | *Response*: Admit. |
|    | *Citation*: Id., p. 2 | *Citation*: |